

EOD
03/12/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **THOMAS PAUL BACKAL** | § | Case No. 12-41352 |
| xxx-xx-9340 | § | |
| | § | |
| *Debtor* | § | Chapter 7 |

| | | |
|---|---|---|
| ROB TREINEN, O. RANDOLPH | § | |
| BRAGG, and ELSA ANCHONDO in | § | |
| her capacity as Class Representative | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Adversary No. 12-4125 |
| | § | |
| THOMAS PAUL BACKAL, | § | |
| | § | |
| *Defendant* | § | |

## MEMORANDUM OF DECISION GRANTING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT[1]

ON THIS DATE the Court considered the Motion for Summary Judgment filed by

the Plaintiffs, Rob Treinen, O. Randolph Bragg, and Elsa Anchondo ("Plaintiffs"), in the

above-referenced adversary proceeding. Plaintiffs' adversary complaint seeks a

determination that the debt owed to them by the Defendant-Debtor, Thomas Paul Backal,

is excepted from the scope of his Chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(6)

or §523(a)(2)(A). "Plaintiffs' Motion for Summary Judgment"[2] focuses upon 11 U.S.C.

---

[1] This Memorandum is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] Dkt #6, filed October 18, 2012.

§523(a)(6), which excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." *See* 11 U.S.C. § 523(a)(6).[3] According to Plaintiffs, the factual findings adopted by the United States District Court for the District of New Mexico, upon recommendation by a United States Magistrate Judge for that district, that resulted in the assessment of sanctions against the Defendant for various discovery abuses and/or acts of misconduct perpetrated by the Defendant in the course of litigation with the Plaintiffs before that court, establish the elements necessary to render that sanctions debt non-dischargeable as a matter of law under § 523(a)(6).[4] Plaintiffs alternatively contend that such findings render the sanctions debt non-dischargeable as a matter of law under 11 U.S.C. § 523(a)(2)(A) as a debt incurred through "false pretenses, a false representation, or actual fraud." Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court finds that Plaintiffs have demonstrated that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law that the debt owed to them by the Defendant is non-dischargeable under § 523(a)(6).[5]

---

[3] Plaintiffs' Motion at 4.

[4] *Id*.

[5] This Court has jurisdiction to consider the Plaintiffs' Complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I).

**Factual and Procedural Background**[6]

On February 26, 2009, Plaintiff Elsa Anchondo filed a class action lawsuit in the United States District Court for the District of New Mexico, the Hon. Robert C. Brack, presiding (the "Federal Litigation"), against an organization known as Anderson, Crenshaw and Associates, L.L.C. ("ACA").[7] As that litigation unfolded over the next three years, prior to the filing of the Debtor's voluntary Chapter 7 petition on May 21, 2012, the District Court entered two separate orders sanctioning the Debtor in his individual capacity for misconduct, and those sanctions comprise the debt that Plaintiffs seek to have declared non-dischargeable. Plaintiffs Treinen and Bragg represented Ms. Anchondo and the Class in the Federal Litigation.[8] The Debtor served as the chief operating officer of ACA at the inception of the Federal Litigation.[9]

The first stage of the Federal Litigation culminated with the parties successfully mediating on a class basis and reaching a settlement whereby all class members, including Ms. Anchondo, would receive monetary relief.[10] The issue of attorney's fees and costs was determined by the District Court, which awarded attorney's fees to the

---

[6] The facts presented are those which are uncontested between the parties and are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

[7] Plaintiffs' Motion at 2.

[8] Plaintiffs' Complaint at 2.

[9] *Id.*

[10] Plaintiffs' Ex. F at 8.

Plaintiffs in the amount of $63,333.52 on December 16, 2009.  ACA unsuccessfully prosecuted an appeal of that award to the Tenth Circuit, *see Anchondo v. Anderson, Crenshaw, & Assocs., L.L.C.*, 616 F.3d 1098 (10th Cir. 2010), with the appeal resulting in a supplemental attorney's fee award to the Plaintiffs in the amount of $9,310.47.[11]

Subsequent to that initial appeal, the Plaintiffs sought to collect the judgment that they had earlier secured.  During the post-judgment discovery process, Plaintiffs began to suspect that a negative response given by ACA to an earlier request for production was false.[12]  In response to a request for any documents related to insurance coverage held by ACA, ACA had denied the existence of any such coverage.  Having uncovered evidence in the post-judgment period that such a sworn response was false, the Plaintiffs filed their first motion for sanctions against the Debtor and obtained an evidentiary hearing regarding the validity of the earlier denial.  The Debtor testified at that hearing in direct contravention to the earlier sworn response by confirming the existence of insurance coverage that might have been relevant to the Plaintiffs' claims.[13]   As a result, the Hon. William P. Lynch, United States Magistrate Judge, sanctioned the Debtor, among other defendants, the sum of  $4,213.57 for post-judgment discovery abuse on the basis that the

---

[11] *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, No. 08-CV-202 (D. N.M.) at Doc. No. 126, Order filed 10/19/10; *see also* Plaintiffs' Motion at 2, ¶¶ 1, 2.  It should be noted that the portion of the debt owed to Plaintiffs (and the rest of the Class in the original litigation) consisting of the original mediated settlement amounts and the initial attorney's fees and costs awarded in the initial judgment is not at issue before this Court.

[12] Plaintiffs' Motion at 2, ¶ 3.

[13] Plaintiffs' Ex. A at 41:8-25; 42:1-2.

Debtor-Defendant either provided the false response or directed that it be given.[14]

After receiving confirmation from ACA's former insurance company of the existence of a "claims made" policy and that the failure to timely file a claim regarding the Federal Litigation filed by Anchondo precluded payment of the Anchondo claim, the Plaintiffs filed a second motion for sanctions. In May and June 2011, a hearing was conducted before Magistrate Judge Lynch. The Magistrate Judge recommended findings of discovery abuse and misconduct against the Debtor and that further sanctions be imposed by the District Court against the Defendant and his lawyer, jointly and severally, in the amount of $76,463.46.[15] The Magistrate Judge also incorporated the previously-unpaid sanction amounts to his subsequent recommendations, along with the fees and costs associated with the prosecution of the Plaintiffs' second sanctions motion.[16] The District Court adopted the recommendations issued by the Magistrate Judge, including the factual determinations regarding the Debtor's misconduct.[17] The District Court issued its sanctions order against the Defendant, relying upon its inherent powers to punish "serious misconduct" occurring before it.[18] The Debtor appealed that subsequent sanctions order

---

[14] Plaintiffs' Ex. D.

[15] Plaintiffs' Ex. F at. 8-9.

[16] *Id*. This second sanctions award, coupled with the attorney's fees and costs also awarded following the second sanctions hearing, totaled $76,463.46 [$69,477.56 in sanctions plus $6,985.90 in fees and costs]. Of that amount, $7,620.00 [$4,020.00 divided among each of the 67 other class members] is not at issue in this adversary proceeding. Thus, it is a debt in the amount of $68,843.46 for which the Plaintiffs seek a determination of dischargeability in this adversary proceeding.

[17] Plaintiffs' Ex. G.

[18] *Id*. The propriety of the District Court's exercise of its inherent powers to issue the sanctions order has not been challenged in this Court by any party.

to the Tenth Circuit Court of Appeals, but that appeal was stayed by the Defendant's filing of his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 21, 2012.[19]

The Plaintiffs subsequently initiated this adversary proceeding, seeking a determination that the December 5, 2011 sanctions order should be declared non-dischargeable under § 523(a)(6) as a "willful and malicious injury" and under §523(a)(2)(A) as a debt incurred through "false pretenses, a false representation, or actual fraud."

## Discussion

*Summary Judgment Standard*

Plaintiffs bring their Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).[20]

---

[19] *See* Defendant's Ex. 2.

[20] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended or a sham." *Bazan ex. rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). "A fact is material only its resolution would affect the outcome of the action. . . . " *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

The manner in which the required summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion rests on the moving party, "that party must support its motion with credible evidence – using any of the materials specified in Rule 56(c)– that would entitle it to a directed verdict if not contradicted at trial. *Celotex*, 477, U.S. at 331.

Upon a *prima facie* showing by the movant of entitlement to judgment as a matter of law, the non-movant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)). If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless. The substantive law will identify which facts are material. *Id.*

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).

In this case, the Plaintiffs bear the ultimate burden as to non-dischargeability. Therefore, the Plaintiffs are entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under the non-dischargeability

theories that are pled.  The Plaintiffs assert that the doctrine of collateral estoppel resulting from the entry of the December 5, 2011 sanctions order provides the factual foundation necessary to support a finding of non-dischargeability.  In order to properly assess this claim, the Court must first determine the applicability of the doctrine itself.  If collateral estoppel applies, then any appropriate factual findings of the United States District Court should not be disturbed here, and the Court will apply those findings to the non-dischargeability elements.  To the extent that an actual controversy does exist over a disputed fact, the finder of fact resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *U.S. ex rel. Longhi v. United States,* 575 F.3d 458 (5th Cir. 2009).

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994), *quoting Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also* RESTATEMENT (SECOND) OF JUDGMENTS §27 (1982) ["When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."].  "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to

dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of §523(a)(6)." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264 (5th Cir. 2005) (quotation marks and alterations omitted). The bankruptcy court retains exclusive jurisdiction, however, to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 285, n.11 (1991); *Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1255 (5th Cir. 1984).

Because the judgment against the Defendant arose from a federal court, federal principles of issue preclusion control. *RecoverEdge, L. P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995). Accordingly, the application of issue preclusion in this case rests upon three factors[21]: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 932 (5th Cir.), *cert denied,* 527 U.S. 1004 (1999) (*citing Pentecost*, 44 F.3d at 1290).

The Defendant initially suggests that issue preclusion cannot be properly applied because the sanctions order was subject to an appeal at the time of the bankruptcy filing.

---

[21] Though considered extraneous in most circumstances, a fourth requirement that there be "no special circumstance that would render preclusion inappropriate or unfair" is sometimes listed, *see, e.g., id; U.S. v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), particularly in cases involving offensive collateral estoppel. But since this case involves traditional (or mutual) issue preclusion and no party has alleged the existence of any such special circumstance, this fourth requirement is deemed inapplicable to the case at hand.

However, "under the federal view, the pendency of an appeal does not prevent the application of the collateral estoppel doctrine unless the appeal involves a full trial de novo." *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 846 (10th Cir. 1994); *Kane v. Town of Harpswell (In re Kane)*, 254 F.3d 325, 328 (1st Cir. 2001); *Timmons v. Special Ins. Servs.*, 984 F.2d 997, 1008 (E.D. Tex. 1997); See also 18A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE §4433 (2d ed. 2002) ["preclusive effect cannot be suspended because an appeal was not taken or is currently undecided"]. The Debtor's argument to the contrary is based on an outdated Texas case that predates the Texas adoption (also followed by the Fifth Circuit) of the general standards set forth in the RESTATEMENT (SECOND) OF JUDGMENTS §13 (1982), and comment (f) in particular.[22] Thus, the final nature of the order imposing the sanctions upon the Defendant is established and justifies the imposition of issue preclusion standards, notwithstanding the status of any appeal.

Otherwise, the Plaintiffs have successfully demonstrated fulfillment of the *Southmark* elements for the application of issue preclusion principles. Both parties to this action were involved in the Federal Litigation and aligned similarly. The United States Magistrate Judge in New Mexico held an evidentiary hearing on Plaintiffs' claim for sanctions at which the Defendant appeared and testified. The Magistrate Judge admitted

---

[22] Debtor's "Response to Motion for Summary Judgment" cites *Texas Trunk Ry. Co. v. Jackson*, 22 S.W. 1030 (Tex. 1893). *See* Debtor's Response at 3. As Plaintiffs note, that case was expressly overturned in 1986 by *Shurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986).

evidence, heard argument, and recommended to the District Court proposed factual findings that he derived from the submitted evidence. The District Court adopted those recommended factual findings as the foundation for issuing the sanctions order and the summary judgment evidence establishes the existence of the following factual findings arising from that adversarial context:[23]

1. the Defendant-Debtor knew that ACA had insurance coverage of the type requested by Plaintiffs. Defendant's testimony to the contrary, including his supposed belief that the insurance had lapsed, was not credible;[24]

2. the Defendant-Debtor acted intentionally and in bad faith in failing to disclose the existence of insurance coverage in response to Plaintiffs' Request for Production No. 16. Defendant's later testimony directly contradicted that negative response;[25]

3. the Defendant-Debtor intentionally and in bad faith failed to report the claim to the insurance company;[26]

4. the Defendant-Debtor's repeated "serious misconduct" with relation to the litigation process prolonged the litigation unnecessarily by forcing Plaintiffs to investigate and pursue the insurance policy at issue and file two separate motions seeking both the payment of the earlier award and the recoupment of damages caused;[27] and

5. Clear and convincing evidence existed that the Defendant-Debtor acted in bad faith in attempting to deceive both Anchondo and the Court about whether ACA had insurance coverage when this lawsuit was filed and in

---

[23] The District Court specifically stated that it "shall affirm and adopt all of the Magistrate Judge's factual findings and legal conclusions." Plaintiffs' Ex. G, pg. 2.

[24] Plaintiffs' Ex. G, pg. 2.

[25] Plaintiffs' Ex. F, pg. 7.

[26] Plaintiffs' Ex. G, pg. 2.

[27] Plaintiffs' Ex. F, pg. 7.

failing to submit the claim.[28]

These findings arising from the litigated sanctions motion are sufficient to meet the requirement that an issue be "actually litigated" before it can be given binding effect and the summary judgment evidence sufficiently demonstrates that the determination of these factual issues in the prior action in New Mexico was necessary to the imposition of the sanctions order. The remaining defense offered by the Defendant is that the findings rendered by the District Court fall short of meeting the elements necessary to determine non-dischargeability under either cause of action pled in the complaint. Thus, the question arises as to whether such established facts are sufficient to prove a "willful and malicious injury" under §523(a)(6) in satisfaction of the first *Southmark* element.

*§523(a)(6)*

The United States Supreme Court has offered its opinion as to what types of debts Congress intended to except from discharge pursuant to §523(a)(6)[29]. In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 (1998), the Supreme Court stated that:

> [T]he word "willful" in (a)(6) modifies the word "injury", indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act

---

[28] Plaintiffs' Ex. F, pg. 8.

[29] Section 523(a)(6) of the Bankruptcy Code provides as follows:

> (a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt ...
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

-13-

> that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover..., the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." RESTATEMENT (SECOND) OF TORTS §8A, comment *a*, p. 15 (1964).

*Geiger* at 977. The Supreme Court concluded that negligent or reckless acts are not sufficient to establish that a resulting injury is "willful and malicious" and that, therefore, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of §523(a)(6)." *Geiger* at 978.

In *Matter of Miller*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit analyzed the *Geiger* ruling in an effort to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury. The *Miller* court determined that a "willful ... injury" is established under §523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action or (2) there is a subjective motive to cause harm by the party taking a deliberate or intentional action. It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under §523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that malice element. *Miller,* 156 F.3d at 604-06.

Notwithstanding the fact that the record from the Federal Litigation in New Mexico contains repeated denouncements of the Defendant's personal conduct and descriptions of the disgust garnered thereby, it is not surprising that the District Court issued no finding regarding the subjective intent of the Defendant-Debtor to cause the *injury* sustained by the Plaintiffs.  It was sufficient for that court to determine that sanctions were warranted based upon the clear findings that the Defendant-Debtor acted in bad faith and with specific intent against the Plaintiffs.  This Court's examination must therefore necessarily focus upon whether the Defendant's actions were substantially certain to cause harm to the Plaintiffs.

The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants in this bankruptcy context rarely admit any prior action was taken with the intent to cause harm to anyone.  A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re Vollbracht*, 276 Fed. Appx. 360 (5th Cir. 2007).

This case closely resembles the Fifth Circuit decision in *Keaty*.  In *Keaty*, the wrongful conduct alleged against the debtor included intentional misrepresentations in the discovery process in a case that was itself filed knowingly without foundation and "crafted for the purpose of harassment." *Keaty*, 397 F.3d at 274.  The Circuit determined

that the debtor's actions in that case were "designed to deliberately prolong the proceedings unnecessarily" — an objective that was "substantially certain to injure [plaintiff], since deliberately and needlessly prolonging the proceedings would necessarily cause [plaintiff] financial injury." *Id*. Similarly, the federal district court in New Mexico found that the Defendant had acted intentionally to deceive both the court itself and the class action plaintiffs, unnecessarily prolonging the litigation through non-disclosure and causing direct harm to the Plaintiffs by failing to submit the claim to ACA's insurance carrier. The necessary result of these intentional failures was to cause harm to the Plaintiffs, first by ensuring that insurance coverage to satisfy all or part of the assessed liability would be denied to the Plaintiffs and later by forcing the Plaintiffs to conduct their own extensive investigative work to discover and to prosecute the Defendant for his earlier, intentional non-disclosures. As in *Keaty*, this Court concludes that the ultimate injuries suffered by the Plaintiffs were substantially certain to result from the Debtor's intentionally wrongful conduct. Therefore, the sanctions award imposed against the Debtor-Defendant by the United States District Court for the District of New Mexico should be declared non-dischargeable under § 523(a)(6).[30]

---

[30] Because the referenced debt is excepted from discharge under 11 U.S.C. §523(a)(6), the Court need not reach the Plaintiff's arguments under §523(a)(2)(A) of the Bankruptcy Code.

## Conclusion

For the reasons stated above, the Court concludes that the Plaintiffs, Rob Treinen, O. Randolph Bragg, and Elsa Anchondo, are entitled to a summary judgment that the debt of $68,843.46 owing to them by the Debtor-Defendant, Thomas Paul Backal, arising from the sanctions order issued on December 5, 2011 by the United States District Court for the District of New Mexico is non-dischargeable under the provisions of 11 U.S.C. §523(a)(6). An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 03/12/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE